**UNION INSURANCE COMPANY and Union Standard Lloyds, Appellants,**

v.

**DON'S BUILDING SUPPLY, INC. n/k/a Don'S Building Supply, L.P., Appellee.**

No. 05–06–00884–CV.

Court of Appeals of Texas, Dallas.

Sept. 23, 2008.

Don Martinson, Barry H. Fanning, Leslie Elizabeth Pitts, Rebecca Raper, Robert Fugate, Fanning, Harper & Martinson, P.C., Dallas, for appellants.

Thomas B. Alleman, Winstead, Sechrest & Minick, P.C., Dallas, for appellee.

Before Justices WHITTINGTON, BRIDGES, and LAGARDE.[1]

## OPINION

Opinion by Justice WHITTINGTON.

In this insurance coverage dispute, the trial judge granted summary judgment for appellee Don's Building Supply, Inc. n/k/a Don's Building Supply L.P. Appellants Union Insurance Company and Union Standard Lloyds (together referred to as Union) contend the trial judge should have denied appellee's motion for summary judgment and granted their motion for summary judgment. The controlling issue in this case was recently decided by the Texas Supreme Court in *Don's Building Supply, Inc. v. OneBeacon Insurance Company,* 51 Tex. Sup.Ct. J. 1367, 2008 WL 3991187 (Tex. August 29, 2008), *available at* http://www.supreme.courts.state.tx.us/historical/2008/aug/070639.pdf. We affirm the trial court's judgment.

### Background

Don's Building Supply purchased policies of commercial general liability insurance from Union for coverage from December 1, 1996 through December 1, 1998. In July, 2004, William E. Kantz and Jo I. Kantz sued Don's, among others, alleging Don's was the distributor and seller of a defective exterior insulation and finish system (EIFS) applied to their home. In this lawsuit, Union sought a declaratory judgment that it had no duty to defend or indemnify[2] Don's from the Kantzs' claims. Union filed a motion for summary judgment, which a retired judge, sitting for the trial judge, denied. Don's then moved for summary judgment, and Union moved for reconsideration of its motion. The trial judge granted Don's motion, declaring Union had a duty to defend Don's.

In *OneBeacon,* the Fifth Circuit certified two questions to the Texas Supreme Court regarding when coverage is triggered under an occurrence-based general liability insurance policy. *See OneBeacon,* 51 Tex. Sup.Ct. J. at 1368. In response, the supreme court held that an insurer's duty to defend is triggered under Texas law where damage is alleged to have occurred during the policy period but was inherently undiscoverable until after the policy expired. *OneBeacon,* 51 Tex. Sup.Ct. J. at 1368. The *OneBeacon* case also involved EIFS, and Don's was a party as well. The *OneBeacon* court rejected the "manifestation rule," under which we had held "no liability exists on the part of the insurer unless the property damage manifests itself, or becomes apparent, during the policy period." *Dorchester Dev. Corp. v. Safeco Ins. Co.,* 737 S.W.2d 380, 383 (Tex.App.–Dallas 1987, no writ). In this appeal, Union urged application of the manifestation rule. Because the supreme court has rejected this rule, we must as well.

### Standard of Review

The standards for reviewing a summary judgment are well established. The party moving for summary judgment has the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). When the trial court grants one party's motion for summary judgment and denies the other party's motion, we review both sides' summary judgment evidence, determine all

---

1. The Honorable Sue Lagarde, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

2. Don's motion for summary judgment and the trial court's judgment address only the duty to defend.

questions presented, and render the judgment the trial court should have rendered. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000).

### Discussion

■ An insurer's duty to defend is determined by the allegations in the pleadings and the language of the insurance policy. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997) (per curiam). This is sometimes referred to as the "eight corners rule." *Merchants Fast Motor Lines*, 939 S.W.2d at 141. If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured. *Merchants Fast Motor Lines*, 939 S.W.2d at 141. When applying the eight corners rule, we give the allegations in the petition a liberal interpretation. *Merchants Fast Motor Lines*, 939 S.W.2d at 141. A liability policy obligates the insurer to defend the insured against any claim that could potentially be covered, regardless of the claim's merits. *Samsung Electronics America, Inc. v. Federal Ins. Co.*, 202 S.W.3d 372, 376 (Tex.App.–Dallas 2006), *aff'd*, 51 Tex. Sup.Ct. J. 1352, 2008 WL 4000812 (Tex. August 29, 2008).

■ The petition in the underlying suit alleges that during construction of the Kantzs' home in 1991, EIFS was applied as an exterior veneer system. The Kantzs acquired the home in September 2003. They allege that although they did not discover the damage "until recently," the injury to their home actually began to occur when moisture first penetrated behind the EIFS, within six months to one year after application of the EIFS, and was continuous thereafter:

> said injury to the home actually began to occur on the occasion of the first penetration of moisture behind the EIF System which would have been at such time as the improperly installed sealant joints and sealants began to fail, allowing moisture behind the system. Such failure would have been within six months to one year after application of the EIFS which in the instant case was 1991, and such injury was continuous thereafter.

The Kantzs allege Don's was the distributor and seller of the EIFS. The Kantzs assert claims for negligence, fraudulent misrepresentation, fraudulent nondisclosure, and products liability.

The relevant policy provisions are identical to those the court considered in *OneBeacon*. *See OneBeacon*, 51 Tex. Sup.Ct. J. at 1369. Don's insurance policies provide, "We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." The "insuring agreement" paragraph also provides, "This insurance applies to . . . 'property damage' only if: . . . (1) The . . . 'property damage' is caused by an 'occurrence' . . .; and (2) The . . . 'property damage' occurs during the policy period." "Occurrence" is defined in the policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Property damage" is defined in the policies as follows:

> "Property damage" means:
>
> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

In *OneBeacon*, interpreting the same policy language, the supreme court held, "Considering these provisions together and reading them for their plain meaning, we hold that property damage under this policy occurred when actual physical damage to the property occurred. The policy says as much...." *OneBeacon*, 51 Tex. Sup.Ct. J. at 1369. The supreme court referred to this rule as the "actual injury" rule. *See OneBeacon*, 51 Tex. Sup.Ct. J. at 1370 ("the analysis we adopt today, [is] sometimes called the 'actual injury' or 'injury-in-fact' approach"). The court further held, "Under the actual-injury rule applicable to this policy, a plaintiff's claim against DBS that any amount of physical injury to tangible property occurred during the policy period and was caused by DBS's allegedly defective product triggers OneBeacon's duty to defend." *OneBeacon*, 51 Tex. Sup.Ct. J. at 1374.

Similarly, the Kantzs allege that physical injury to tangible property caused by defective EIFS occurred from approximately 1992 through the date of their petition in 2004, necessarily including 1996 through 1998, the policy periods for Union's policies. Thus, Union's duty to defend was triggered. *See OneBeacon*, 51 Tex. Sup.Ct. J. at 1374.

Union also contends there is no duty to defend Don's because the Kantzs did not own the home during the policy period. Union cites *Dorchester*, 737 S.W.2d at 383, *Snug Harbor, Ltd. v. Zurich Ins.*, 968 F.2d 538 (5th Cir.1992), and *Transport Ins. Co. v. Lee Way Motor Freight, Inc.*, 487 F.Supp. 1325 (N.D.Tex.1980), among others, for the proposition that "the time of the occurrence of an 'accident,'within the meaning of a liability indemnity policy, is not the time the wrongful act was committed but the time the complaining party was actually damaged." *Dorchester*, 737 S.W.2d at 383 (quoting *Millers Mut. Fire*

*Ins. Co. v. Bailey, Inc.*, 103 Idaho 377, 647 P.2d 1249, 1251 (1982)). Union argues the Kantzs did not suffer damage until they purchased the property in 2003, after the Union policies had expired.

The cases cited by Union, however, do not hold the relevant time is when a particular claimant is injured rather than when the property suffers the injury. *See, e.g., Dorchester*, 737 S.W.2d at 383 (citing rule that "coverage is not afforded unless an identifiable damage or injury, other than merely causative negligence, took place during the policy period"). Here, the Kantzs allege, "[c]ontinuous and repeated exposure of the moisture-sensitive substrates of the home to the elements, specifically rain and wind-driven rain, has resulted in an on-going exposure to moisture and accumulation of water behind the EIF System. Each repeated moisture intrusion event has contributed to and worsened the damage to Plaintiffs' property." This is not an allegation that the damage occurred at the time of the wrongful act, that is, the distribution and sale by Don's of defective EIFS. Therefore our holding is consistent with the rule stated in *Dorchester*. Union also relies on an unpublished opinion from the United States District Court for the Northern District of Texas, *McKinney Builders II, Ltd. v. Nationwide Mut. Ins. Co.*, No. 3:97–CV–3053–R, 1999 WL 608851, 1999 U.S. Dist. LEXIS 12559 (N.D.Tex. August 11, 1999). The opinion in *McKinney* does note, "Thus, while the physical injury existed before July 1989, the homeowners actually suffered damages in July 1989, when they purchased the houses from plaintiffs." *McKinney*, 1999 WL 608851, at *8, 1999 U.S. Dist. LEXIS 12559 at *26. However, this statement was made in the context of determining whether the injury manifested itself during the policy period, an issue no longer presented here. *McKinney* does not stand for the proposition that a plaintiff who did

not own the home during the policy period could not allege that property damage occurred during the policy term. *See McKinney*, 1999 WL 608851, at *8, 1999 U.S.Dist. LEXIS 12559 at *25–*27.

While ownership of the home was not an issue in *OneBeacon*, we do not believe this distinction warrants departure from the supreme court's analysis. The insuring agreements between Don's and Union provide, "We will pay those sums that the insured becomes legally obligated to pay as damages because of ... 'property damage' to which this insurance applies. We will have the right and duty to defend *any* '*suit' seeking those damages*." (Emphasis added). As Don's argues, the Kantzs allege a continuing injury for which they are entitled to recover all of their damages, regardless of when they purchased the house. Union's contractual obligation is to defend "any" suit "seeking those damages." Whether there are defenses available to Don's on the merits of the Kantzs' claims based on the time of the Kantzs' purchase of the home is not our inquiry. We do not address the merits of the underlying plaintiffs' claims in determining the duty to defend. *See OneBeacon*, 51 Tex. Sup.Ct. J. at 1374 (policy imposes duty to defend without regard to merits of underlying claim against insured). The *OneBeacon* court held, "the insurer's duty to defend DBS depends on whether the homeowners' pleadings allege property damage that occurred during the policy term." *OneBeacon*, 51 Tex. Sup.Ct. J. at 1374. The Kantzs' pleadings do so. *See OneBeacon*, 51 Tex. Sup.Ct. J. at 1373 ("Occurred means when *damage* occurred, not when *discovery* occurred. In this case, property damage occurred when the home in question suffered wood rot or some other form of physical damage." [Emphasis in original] ).

Under the eight corners of the Kantzs' petition and Don's insurance policy, the Kantzs allege property damage occurred during the policy term. *See OneBeacon*, 51 Tex. Sup.Ct. J. at 1374. Union is contractually obligated to defend Don's against the Kantzs' claims.

We affirm the trial court's judgment.