269 S.W.3d 314 (2008)
Roger W. BREWSTER and Annetta P. Brewster, Appellants,
v.
COLUMBIA MEDICAL CENTER OF McKINNEY SUBSIDIARY, L.P., d/b/a Medical Center of McKinney and Amer Suleman, M.D., Appellees.
No. 05-08-00227-CV.
Court of Appeals of Texas, Dallas.
November 14, 2008.
*315 William A. Newman, Dallas, TX, Les Weisbrod, Anjel Kerrigan Avant, Miller, Curtis & Weisbrod, L.L.P., Dallas, TX, for Appellants.
James Walker, Michael A. Yanof, Stan Thiebaud, Stinnett, Thiebaud & Remington, L.L.P., James J. McGoldrick, Jeffrey F. Wood, Jones, Carr, McGoldrick, L.L.P., Dallas, TX, for Appellees.
Before Justices MORRIS, WHITTINGTON and O'NEILL.

OPINION
Opinion by Justice O'NEILL.
Roger and Annetta Brewster appeal[1] summary judgments granted to Columbia *316 Medical Center of McKinney Subsidiary, L.P., d/b/a Medical Center of McKinney ("Hospital") and Amer Suleman, M.D. ("Doctor") on their affirmative defense of limitations. The Brewsters raise two issues contending claims raised in their amended petition ("new claims") are not barred because either they arise out of the same transaction as claims alleged in a timely filed original petition, or the new claims were actually alleged generally in the original petition. For the reasons set out below, we conclude the trial court did not err and affirm its summary judgments.

Background
On November 17, 2003, Roger Brewster ("Patient") was transferred to the Hospital for treatment of shortness of breath and chest pain. The Doctor was his attending physician. The Patient was first admitted to the Progressive Care Unit ("PCU") for treatment of atrial fibrillation and congestive heart failure. At approximately 2:30 p.m. on the day that he was admitted, his conditioned worsened and he went into cardiac arrest.[2] After being sedated and stabilized, he was transferred from the PCU to the Hospital's ICU where he remained until his discharge on December 6, 2003. While in the ICU, he developed pressure ulcers and other skin problems.
On January 24, 2006, the Brewsters filed suit against, among others, the Doctor and the Hospital. The Original Petition alleged specific acts of negligence with respect to skin ulcers the Patient acquired in the ICU, and a general allegation that each defendant "fail[ed] to meet the minimal standards of medical practice." In the section of the Original Petition entitled Procedural Requirements, the Brewsters state that they attach the original reports and curriculum vitae of Lige B. Rushing, Jr., M.D. and Kathy Martinez, R.N. ("Nurse's Report") "in compliance with Section 74.351 of the Texas Civil Practices and Remedies Act." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (Vernon 2005 & Supp. 2008)[3]. Dr. Rushing's report related solely to the patient's skin problems. However, the Nurse's Report not only criticized the treatment of Mr. Brewster's skin problems, it also contained specific allegations of the violation of the standard of care for his cardiac condition ("cardiac claims"). Neither of the reports was incorporated into the pleading and thus are not part of the Original Petition. Their sole purpose was to satisfy the expert reports requirement in Section 74.351(a) of the Statute.
Fifteen months after filing the Original Petition and over a year after limitations had run, the Brewsters filed their First Amended Petition containing specific allegations of negligence in the treatment of the Patient's heart problems. In order to comply with the Statute, they added as an attachment, the expert report of a board-certified cardiologist, Paul W. Dlabal, M.D. In contrast to the Original Petition, the *317 Brewsters' amended pleading "incorporates [the expert reports] as if fully set out in length."
Both the Hospital and Doctor filed motions for summary judgment on the ground that limitations had run before the First Amended Petition was filed and the Brewsters were barred from bringing the cardiac claims. The trial court granted the motions and severed the cardiac claims from the ongoing lawsuit. The Brewsters appeal the summary judgments which struck the cardiac claims as being barred by limitations.

Standard of Review
Summary judgment is appropriate when there is no genuine issue as to any material fact and judgment should be granted in favor of the movant as a matter of law. Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 846 (Tex.2005) (citing KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex.1999)). We review the trial court's decision de novo. Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994). A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 220 (Tex.2003). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc., 644 S.W.2d 443, 445 (Tex.1982). If the movant establishes that the statute of limitations bars the action, the nonmovant must then present summary judgment evidence raising a fact issue in avoidance of the statute of limitations. Id.; Kang v. Hyundai Corp.(U.S.A.), 992 S.W.2d 499, 501 (Tex. App.-Dallas 1999, no pet.); Palmer v. Enserch Corp., 728 S.W.2d 431, 435-36 (Tex. App.-Austin 1987, writ ref'd n.r.e.).

Discussion
The Brewsters seek reversal on the ground that the cardiac claims were timely filed because either (1) the cardiac claims arise out of the same transaction or occurrence as the skin allegations and thus the cardiac claims in the First Amended Petition "relate back" to the timely filed Original Petition under Section 16.068 of the Texas Civil Practice and Remedies Code, or (2) the Original Petition's general claim of negligence coupled with specific criticisms contained in the Nurse's Report adequately plead the cardiac claims. Neither argument persuades us.

A. The skin allegations and the cardiac claims arise from different transactions
The two-year limitations period set out in Section 74.251 of the Statute governs health care liability claims. The Brewsters, however, contend that the cardiac claims are not barred because the Patient was brought to the Hospital to alleviate his heart problems, his skin ulcers and cardiac claims are all part of the same transaction, and, accordingly, the relation back provision found in Texas Civil Practice and Remedies Code § 16.068 applies. TEX. CIV. PRAC. & REM.CODE ANN. § 16.068 (Vernon 2008). Section 16.068 provides that new facts or claims raised in a subsequent pleading relate back to a timely filed pleading and are not barred unless the amendment or supplemental pleading "is wholly based on a new, distinct, or different transaction or occurrence." Id. Accordingly, Section 16.068 will preserve the cardiac claims only if they arose out of the same transactions as the skin problems.
"A `transaction' is defined as a set of facts that gives rise to the cause of *318 action premised thereon." Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc., 219 S.W.3d 563, 587 (Tex.App.-Austin 2007, pet. denied.). While close in time, however, the conduct which resulted in skin ulcers differs from the conduct which resulted in the cardiac claims. Harris v. Galveston County, 799 S.W.2d 766, 769 n. 7 (Tex.App.-Houston[14th Dist.] 1990, writ denied)(while surgery and postoperative care occurred very closely in time, they are based upon separate transactions); see also Bratcher v. Boeke, 207 S.W.3d 431, 432 (Tex.App.-Dallas 2006, no pet.) (placement of denture and installation of dental implants were not part of the same transaction or occurrence); J.K. and Susie Wadley Research Inst. and Blood Bank v. Beeson, 835 S.W.2d 689, 697 (Tex. App.-Dallas 1992, writ denied) (wife's claim in amended petition relates back to decedent's claim because both arose from the same blood transfusion).
The Original Petition contains a list of nine acts or omissions which caused injuries and damages. Seven are specific and relate only to nutrition or acts necessary to maintain skin integrity. The remaining two general assertions relate to failure to properly assess the Patient and failure to meet minimal standard of medical practice. In contrast, the First Amended Petition contains specific allegations relating directly to the cardiac claims that "[d]uring his admission, Mr. Brewster was given toxic amounts of Cardizem to reduce his heart rate [causing] Mr. Brewster [to go] into cardiac arrest ... [and] also during his admission, ... Mr. Brewster was not properly anti-coagulated, causing him to suffer an embolic stroke." Both the cardiac arrest and the embolic stroke took place in the PCU.
The skin care claims and the cardiac claims relate to actions and omissions that took place at different times, in different locations in the Hospital, and in some cases, involved different health care providers. The skin care problems alleged in the Original Petition arose after the Patient was transferred to the ICUafter the Patient's cardiac arrest and stroke in the PCU. The acts and omissions causing the cardiac claims are distinctly different from any conduct causing the Patient's skin problems. The only common element is that they involved the same Doctor and Hospital and occurred in close time proximity. The sets of facts that give rise to the two causes of action are distinct and different. Since the cardiac claims arise from a distinctly different transaction than the skin ulcer claims, there is no relation back under Section 16.068 to preserve the cardiac claims.[4]

B. Claims pleaded in the Original Petition
The Brewsters next argue the Original Petition coupled with the Nurse's Report constitutes an adequate pleading of *319 the cardiac claims. This argument also fails. First, the Nurse's Report is attached to the Original Petition for the sole express purpose of the Brewsters' compliance with Section 74.351 of the Statute. Although an expert report must be furnished, the report "shall not be referred to by any party during the course of the action for any purpose." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(k)(3) (Vernon 2005 & Supp.2008). While a plaintiff may waive his right to keep the expert report out of the proceedings, the Brewsters made no use of the Nurse's Report in the Original Petition. In contrast, the Brewsters expressly incorporated all expert reports "as if fully set out in length" in their First Amended Petition.
Standing alone, the Original Petition contains no allegations of a breach of the standard of care with respect to the cardiac claims. While the Patient's heart condition is mentioned as a background fact to explain why he was at the Hospital, the acts complained of in the Original Petition all relate to the Patient's skin ulcers. The Original Petition does not give "fair notice" of the cardiac claims as required by Texas Rule of Civil Procedure 45(d). TEX.R. CIV. P. 45(d). Under the fair notice standard, "`[a] petition is sufficient if it gives the opposing party information sufficient to enable him to prepare a defense.'" Stafford v. Southern Vanity Magazine, Inc., 231 S.W.3d 530, 535 (Tex.App.-Dallas 2007, pet. denied) (quoting Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 897 (Tex.2000)). Because neither defendant specially excepted to the Brewsters' Original Petition, we construe the pleading liberally to determine if the pleading gives the Doctor or the Hospital fair notice of the cardiac claims. Id. The time and place of the transaction involved and the circumstances of the occurrence which form the basis of the controversy are to be stated with such particularity as will permit the opponent to identify the source and estimate the general scope of the dispute. Pac. Fin. Corp. v. Moody, 272 S.W.2d 403, 408 (Tex.Civ.App.-Austin 1954, no writ).
Fair notice has been given if the pleadings are sufficiently specific that "an opposing attorney of reasonable competence, could with the pleading before him, ascertain the nature and the basic issues of the controversy and the testimony which will probably be relevant." Daniels v. Conrad, 331 S.W.2d 411, 415 (Tex.Civ. App.-Dallas 1959, writ ref'd n.r.e.). See also, Roark v. Allen, 633 S.W.2d 804, 810 (Tex.1982); Schoellkopf v. Pledger, 778 S.W.2d 897, 899-99 (Tex.App.-Dallas 1989, writ. denied). The courts should entertain causes of action which are reasonably inferred from those specifically plead. Gilmore v. Lopez, 974 S.W.2d 67, 68 (Tex.Civ. App.-San Antonio 1998, pet. denied) (citing SmithKline Beecham Corp. v. Doe, 903 S.W.2d 347, 354-55 (Tex.1995)). See also, McGraw v. Brown Realty Co., 195 S.W.3d 271, 275 (Tex.App.-Dallas 2006, no pet.) ("A petition is sufficient if a cause of action or defense can be inferred from what is specifically stated."). Our determination of fair notice is restricted to a review of the pleadings alone without resorting to information from other sources. Stoner v. Thompson, 578 S.W.2d 679, 683 (Tex.1979). Since the Nurse's Report was not part of the Original Petition, it constitutes `information from other sources'. We thus restrict our review to the Original Petition itself. With regard to the cardiac claims, the allegations in the Original Petition against Doctor which Patient relies upon are:
"Defendant ... was guilty of negligence... in one or more of the following particulars:
(1) In failing to preform appropriate assessment of Plaintiff Mr. Brewster;
... [and] ...

*320 (9) In failing to meet the requirements for minimal standards of medical practice."[5]
These allegations would not advise an attorney of reasonable competence that his client was being charged with the negligent medication of Patient in the treatment of his cardiac condition. Although the Patient was admitted for treatment of shortness of breath and chest pain, and suffered cardiac arrest while he was at the Hospital, the Original Petition does not allege any specific act of negligence by the Doctor or the Hospital which impacted his heart condition. We therefore hold that the Original Petition did not provide fair notice of any cardiac claims and overrule the Brewsters' issue.

Conclusion
Since the Original Petition did not provide fair notice of any cardiac claims and since the transactions giving rise to the skin care claims and the cardiac claims are distinct, the cardiac claims were plead for the first time in the First Amended Petition which was filed after the statute of limitations had run. Accordingly, the trial court properly granted summary judgments to Columbia Medical Center of McKinney Subsidiary, L.P., d/b/a Medical Center of McKinney and Amer Suleman, M.D. on their affirmative defenses of limitations. We affirm the trial court's judgments.
NOTES
[1] This appeal is related to Cause No. 05-07-01296, styled Columbia Medical Center Subsidiary, L.P. d/b/a Medical Center of McKinney and Amer Suleman, M.D. v. Roger W. Brewster and Annetta P. Brewster. Although both appeals were submitted on September 2, 2008, they have not been consolidated and remain separate proceedings.
[2] CT scans document he suffered a left middle cerebral arterial stroke.
[3] Chapter 74 of the Texas Civil Practice and Remedies Code governs health care liability claims and is hereinafter referred to as the "Statute". Statute Section 74.351 specifically sets out requirements for the production and contents of expert reports. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (Vernon 2005 & Supp.2008).
[4] We do not reach the issues of whether the Statute now precludes application of the general relation back provision in Section 16.068, or if Bradley v. Etessam, 703 S.W.2d 237, 240-42 (Tex.App.-Dallas 1985, writ ref'd n.r.e.), where this court held Section 16.068 applied to health care claims, remains good law. We acknowledge, when interpreting the Statute's predecessor, the Texas Supreme Court has held when time limitations specifically applicable to a health care claim conflict with another law, the specific limitations provision governs. Bala v. Maxwell, 909 S.W.2d 889, 892-93 (Tex. 1995) (general wrongful death statute of limitations is trumped by health care claim statute of limitations) (decided under the Statute's predecessor, former Article 4590i of the Texas Revised Civil Statutes); Hill v. Milani, 686 S.W.2d 610, 611 (Tex. 1985) (TEX.REV.CIV. STAT. ANN. art. 5537 did not toll health care claims' statute of limitations while doctor was absent from state.).
[5] The other seven allegations, (2)-(8), are all very specific and relate only to nutrition or skin care. The allegations against Hospital and its nurses are the same as those alleged against the Doctor.