GREAT AMERICAN LLOYDS
INSURANCE COMPANY,
Appellant

v.

AUDUBON INSURANCE COMPANY,
Appellee.

No. 05–11–00021–CV.

Court of Appeals of Texas,
Dallas.

Aug. 6, 2012.

Diana L. Faust, R. Brent Cooper, Richard Clark Harrist, Cooper & Scully, P.C., Dallas, TX, for Appellant.

Harrison H. Yoss, Thompson Coe Cousins & Irons, LLP, Dallas, TX, for Appellee.

Before Justices O'NEILL, MARTIN RICHTER, and LANG–MIERS.

## OPINION

Opinion By Justice LANG–MIERS.

This is a dispute between two insurance carriers that provided consecutive coverage to a mutual insured. Appellee Audubon Insurance Company sought contribution and reimbursement from appellant Great American Lloyds Insurance Company for defense and settlement costs it incurred allegedly as the result of Great American's breach of its duty to defend and indemnify their mutual insured. The parties filed cross-motions for summary judgment, and the trial court granted Audubon's and denied Great American's. Great American contends the trial court erred. We affirm the trial court's judgment.

### Background

Holigan Family Investment, Inc., a homebuilder, purchased two policies of commercial general liability insurance from Great American providing coverage from July 1, 1995, through July 1, 1996, and from July 1, 1996, through July 1, 1997. Audubon and other insurance companies provided consecutive commercial general liability coverage to the homebuilder from July 1, 1997, through April 1, 2002.

In December 2001, David and Marilyn DeShields (the homeowners) sued the homebuilder in Harris County alleging that the homebuilder negligently constructed their home. They also sued their own homeowners insurance carrier, Prudential Property and Casualty, alleging negligent claims handling. The homeowners alleged that the exterior balcony of their home was constructed in a defective manner and allowed water to enter the home. They also alleged that although the homebuilder attempted to make repairs, it did so in a negligent manner. Additionally, the homeowners alleged that the HVAC system was negligently installed and resulted in intermittent condensation that dripped outside the pan onto the attic floor. And they alleged that as a result of the negligence of the homebuilder, its employees, and its contractors, toxic mold grew in the walls of the home, potentially exposing the homeowners and their child to biohazardous organisms.

Great American, Audubon, and the other insurers agreed to defend the homebuilder against the homeowners' claims. Great American agreed to pay one-third of the defense costs. About a year later, however, Great American withdrew its agreement to contribute to the homebuilder's defense costs. It concluded that, based on discovery in the lawsuit, the earliest date any damage occurred was around March 30, 1998, which was outside its policy period, and that it did not have a duty to defend or indemnify the homebuilder. Audubon and the other insurers continued to defend the homebuilder. Prudential settled the homeowners' claims against it, and the homeowners nonsuited the Harris County lawsuit.

The homeowners re-filed their lawsuit against the homebuilder in Dallas County; Prudential intervened. Audubon and the other insurers continued to represent the homebuilder and ultimately settled the case with the homeowners and Prudential. Audubon then sued Great American for contribution and reimbursement of defense and settlement costs. Audubon contended that Great American breached its contract with the homebuilder by withdrawing its defense and refusing to indemnify the homebuilder. Both Audubon and Great

American moved for summary judgment on the duties to defend and indemnify; Audubon's motion was for partial summary judgment. For simplicity, we will refer to Audubon's motion for partial summary judgment as simply a motion for summary judgment. The court granted Audubon's motion and reserved the issue of attorney's fees for trial. The parties then stipulated as to attorney's fees, and the trial court issued a final judgment.

In one issue with multiple sub-issues on appeal, Great American contends the trial court erred by granting Audubon's motion and denying Great American's motion.

## STANDARD OF REVIEW

■ When both parties move for summary judgment and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides and determine all questions presented. *Mid–Continent Cas. Co. v. Global Enercom Mgmt., Inc.*, 323 S.W.3d 151, 154 (Tex.2010). If we conclude that the trial court erred, we will render the judgment the trial court should have rendered. *Id.* When a trial court's order does not specify the ground upon which it granted summary judgment, we will affirm the summary judgment if any ground is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000).

## GREAT AMERICAN'S TRADITIONAL MOTION FOR SUMMARY JUDGMENT

In four sub-issues, Great American contends its traditional motion for summary judgment should have been granted for the following reasons: (1) its duty to defend was not triggered because the petition did not allege facts sufficient to show that bodily injury or property damage occurred during Great American's policy period; (2) its duty to defend was not trig-gered because an exclusion applied to preclude coverage; (3) Audubon's claim for breach of contract of Great American's 1995–96 policy was barred by limitations; and (4) all of Audubon's claims are barred by the supreme court's decision in *Mid–Continent Insurance Co. v. Liberty Mutual Insurance Co.*, 236 S.W.3d 765 (Tex.2007).

### A.

### Duty to Defend

Great American contends it did not have a duty to defend the homebuilder. We disagree.

■ An insurer's duty to defend arises when a third party sues the insured on allegations that potentially state a cause of action within the terms of the policy, without regard to the truth or falsity of the allegations. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008); *Gehan Homes, Ltd. v. Employers Mut. Cas. Co.*, 146 S.W.3d 833, 838 (Tex. App.-Dallas 2004, pet. denied). The duty to defend is determined under the "eight corners rule"—that is, by examining the allegations in the underlying pleadings and the language of the insurance policy. *Nokia*, 268 S.W.3d at 491; *Gehan Homes*, 146 S.W.3d at 838. We consider the allegations in light of the policy provisions, giving the allegations in the petition a liberal interpretation in favor of the insured and resolving all doubts in favor of the insured. *Nokia*, 268 S.W.3d at 491; *Gehan Homes*, 146 S.W.3d at 838. If the pleadings do not state facts sufficient to show that the cause of action is clearly covered or not covered, "the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *Nokia*, 268 S.W.3d at 491 (quoting *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26

(Tex.1965)); *Gehan Homes,* 146 S.W.3d at 838.

*Injury or Damage During the Policy Period*

The relevant provisions of Great American's policies provide, "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages." The insuring agreements also state that the "insurance applies to 'bodily injury' and 'property damage' only if . . . the 'bodily injury' or 'property damage' occurs during the policy period." Great American contends it did not have a duty to defend because the petition did not allege injury or damage during Great American's policy period.

The petition in the underlying lawsuit alleged that the balcony was negligently constructed and allowed water to penetrate the home, and that the HVAC system was negligently installed and allowed water to drip onto the attic floor. The petition did not allege when the home was built, when the homebuilder attempted to make repairs, or when the damage occurred. The petition alleged that the homebuilder and its employees and contractors were negligent.

Great American argues that the issue is not whether the homeowners alleged a specific date the property damage or bodily injury occurred, "but whether under the 'eight corners' rule, a duty to defend is triggered where the underlying pleadings contain absolutely no allegations regarding the timing or dates of anything, including construction, repairs, or when the alleged damage or injuries occurred." Audubon responds that *Gehan Homes* controls our decision in this case and that Great American owed a duty to defend because the allegations in the petition did not show that the claim clearly was not covered.

In *Gehan Homes,* the insurers provided coverage to the homebuilder from June 30, 1997, through June 30, 1999. 146 S.W.3d at 837. The homeowners sued the homebuilder but did not allege a date their injuries occurred. *Id.* at 845–46. The insurers moved for summary judgment on their duties to defend and indemnify the homebuilder. *Id.* at 837. In addition to arguing that the petition did not allege "bodily injury," "property damage," or an "occurrence," the insurers argued that the damage did not occur during the policy period. *Id.* at 839–46. We construed the pleadings liberally in favor of the insured and concluded that because the homeowners filed their lawsuit in May 2001 and claimed that they suffered "past" bodily injuries and property damages, the insurers did not establish as a matter of law that there was no allegation of a potential occurrence within the policy period. *Id.* at 846.

Great American argues that in *Gehan Homes* we "devoted no more than one short paragraph to the issue of whether the underlying pleadings sufficiently alleged facts of injury or damage within the policy period to trigger the duty to defend." And it contends that our decision in this case should be controlled instead by *Don's Building Supply, Inc. v. OneBeacon Insurance Co.,* 267 S.W.3d 20 (Tex.2008), and *Union Insurance Co. v. Don's Building Supply, Inc.,* 266 S.W.3d 592 (Tex. App.-Dallas 2008, pet. denied). We disagree.

■ *Don's Building Supply* and *Union Insurance* did not involve pleadings in which no dates were alleged, as here, but, instead, addressed at what point damage or injury occurs so as to trigger a duty to defend (manifestation or actual injury).

*See Don's Bldg. Supply,* 267 S.W.3d at 29–30; *Union Ins.,* 266 S.W.3d at 593. Consequently, those cases are not helpful to our analysis. We conclude that the facts of this case are more like those in *Gehan Homes* and that *Gehan Homes* controls our decision. As we stated in *Gehan Homes,* when facts alleged in a petition are not sufficient to show clearly that there is no coverage, then the insurer has a duty to defend a case that potentially alleges a claim covered by the policy. 146 S.W.3d at 846.

■ The homeowners here filed the underlying lawsuit in 2001 and alleged bodily injuries and property damages in the "past." Construing the allegations liberally in favor of the insured, we conclude that Great American owed a duty to defend the homebuilder and the trial court did not err by denying Great American's traditional motion for summary judgment on that basis. *See Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997) (per curiam) (stating "in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor") (quoting *Heyden Newport Chem.,* 387 S.W.2d at 26); *Gehan Homes,* 146 S.W.3d at 846.

*Policy Exclusion for "Damage to Your Work"*

Great American also argues that it did not have a duty to defend because the homeowners' allegations against the homebuilder for faulty workmanship fall within the exclusion for "damage to your work." The "damage to your work" exclusion in Great American's policy states that coverage is excluded for " 'Property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.' This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." Citing *Pine Oak Builders, Inc. v. Great American Lloyds Insurance Co.,* 279 S.W.3d 650, 654–55 (Tex.2009), Great American argues that the exception for work performed by a subcontractor does not apply here because the petition does not mention the word "subcontractor." We disagree that *Pine Oak Builders* controls the outcome in this case.

■ Unlike the petition in *Pine Oak Builders,* the homeowners here alleged in both the Harris County and the Dallas County lawsuits that the homebuilder and its "contractors," "agents," and "representatives" were negligent in constructing the balcony and installing the HVAC system. *Cf. Pine Oak Builders,* 279 S.W.3d at 654–55 (stating exclusion applied because pleadings did not allege that a subcontractor performed the work and no extrinsic evidence could be introduced to show that subcontractors were used to construct the home). Additionally, the homeowners amended their petition in the Dallas County lawsuit to included the HVAC contractor as a defendant. Construing the petition liberally in favor of the insured, we conclude that the allegations were sufficient to claim that subcontractors may have performed the work and, as a result, the exclusion for "damage to your work" did not apply to preclude Great American's duty to defend.

We conclude that the trial court did not err by denying Great American's traditional motion for summary judgment on its duty to defend.

**B.**

**Statute of Limitations Defense**

Great American next argues it was entitled to traditional summary judgment be-

cause limitations barred Audubon's claim for breach of the Great American 1995–96 insurance contract.

When Audubon initially filed this lawsuit against Great American in 2007, it alleged it was entitled to contribution and reimbursement, citing Great American's 1996–97 policy. When Audubon moved for summary judgment, it sought contribution and reimbursement under both of the Great American policies, but attached only the 1996–97 policy as summary judgment evidence. Audubon later supplemented its summary judgment evidence by filing a copy of Great American's 1995–96 policy. It also sought leave to amend its petition to include a reference to the 1995–96 Great American policy "to cure [Great American]'s technical objections to the summary judgment motion and evidence because [Audubon]'s current pleading does not reference the 1995–96 policy." The trial court granted Audubon's motion for leave. Great American then amended its answer and response to Audubon's summary judgment motion to assert that any claims for contribution or reimbursement arising from its 1995–96 policy were barred by the statute of limitations.

 As Great American contends, a four-year limitations period applies to breach of contract claims. TEX. CIV. PRAC. & REM.CODE ANN. § 16.051 (West 2008). And an action for breach of contract accrues when the breach occurs. *See Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990). Great American argues that any breach of the 1995–96 insurance policy allegedly occurred in 2003 when it withdrew its defense of the homebuilder, but that Audubon did not allege breach of that policy until it amended its petition more than seven years after the alleged breach.

Audubon argues that it amended its petition only to clarify that the homeowners'

claims were covered by both Great American insurance policies and that the claim for breach of the 1995–96 policy related back to its timely filed claim for breach of the 1996–97 policy. Great American responds that the "relation back doctrine" does not save Audubon's claim because the 1995–96 policy is a different transaction and contract from the 1996–97 policy upon which Audubon initially filed its lawsuit in 2007. We agree with Audubon.

 Section 16.068 of the civil practice and remedies code provides:

> If a filed pleading relates to a cause of action ... that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

TEX. CIV. PRAC. & REM.CODE ANN. § 16.068. We have explained that determining whether section 16.068 applies to a particular case involves a two-part test: (1) the cause of action asserted in the original pleading must not have been barred by limitations when it was filed, and (2) the amended pleading which changes the facts or grounds of liability or defense must not be wholly based on a new, distinct, or different transaction or occurrence. *Ware v. Everest Group, L.L.C.,* 238 S.W.3d 855, 866 (Tex.App.-Dallas 2007, pet. denied). "A 'transaction' is defined as a set of facts that gives rise to the cause of action premised thereon." *Brewster v. Columbia Med. Ctr. of McKinney Subsidiary, L.P.,* 269 S.W.3d 314, 317–18 (Tex.App.-Dallas 2008, no pet.) (quoting *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.,* 219 S.W.3d 563, 587 (Tex.App.-Austin 2007, pet. denied)); *Walker v. Presidium, Inc.,*

296 S.W.3d 687, 695 (Tex.App.-El Paso 2009, no pet.).

The first part of the two-part test is not in dispute in this case. The only dispute is whether Audubon's amended pleading asserting a breach of Great American's 1995–96 policy was "wholly based on a new, distinct, or different transaction or occurrence" from its claim asserting a breach of Great American's 1996–97 policy. We conclude it was not.

■ By this lawsuit, Audubon sought reimbursement and contribution for Great American's portion of defense and settlement costs that Audubon contended it paid as a result of Great American's refusal to defend and indemnify the homebuilder. In other words, Great American's withdrawal of its defense of the homebuilder in 2003 and its refusal to contribute to the settlement of the underlying lawsuit are the "set of facts that gives rise to the cause of action." *See Brewster*, 269 S.W.3d at 317–18. And the allegation that Great American breached the 1995–96 policy did not allege a "wholly new, distinct, or different transaction" because all of the petitions asserted claims arising under the same "set of facts"—Great American's withdrawal of its defense of the homebuilder and its refusal to indemnify its insured. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.068; *Walker*, 296 S.W.3d at 694–95; *cf. Brewster*, 269 S.W.3d at 317–18. The only difference in the petitions is that the original and first two amended petitions alleged that Great American's duties arose under the 1996–97 policy, while the third amended petition alleged that Great American's duties arose under both the 1995–96 and the 1996–97 policies. And because the claim under the 1996–97 policy was not time barred when Audubon filed its original petition, we conclude that the claim under the 1995–96 policy related back to the original petition and was not time

barred when it was filed. We conclude that the trial court did not err by denying Great American's traditional motion for summary judgment on this basis.

## C.

### *Mid–Continent* Bar

Great American also argues that the trial court should have granted its traditional motion for summary judgment because Audubon's claims for reimbursement and contribution of defense costs and indemnity payments are barred by *Mid–Continent Insurance Co. v. Liberty Mutual Insurance Co.*, 236 S.W.3d 765 (Tex. 2007).

The *Mid–Continent* case involved two insurance companies, Liberty Mutual and Mid–Continent, that provided liability insurance to a mutual insured during the same policy period. *Id.* at 769. Liberty Mutual also provided excess liability coverage to the insured. *Id.* Both insurers acknowledged a duty to defend, and they agreed to share defense costs. They both agreed that a total verdict against all defendants would be about $2 million to $3 million. *Id.* at 770. But they disagreed about the percentage of liability to be attributed to their mutual insured. *Id.* Liberty Mutual thought their mutual insured would be found about sixty percent at fault. *Id.* Mid–Continent disagreed and valued settlement against their mutual insured at $300,000. *Id.* Liberty Mutual settled the case against the mutual insured for $1.5 million, which was in excess of its primary policy limits, but within the limits of the excess policy. *Id.* Mid–Continent refused to contribute more than $150,000. *Id.* Liberty Mutual sued Mid–Continent for contribution. In certified questions from the Fifth Circuit, the Supreme Court of Texas concluded that the two insurers were co-primary insurers and there was no

duty to reimburse between co-primary insurers. *Id.* at 770–72. The supreme court based its decision on the "other insurance" language in the insurers' respective policies, which stated:

4. Other Insurance.

If other valid and collective insurance is available to the insured for a loss we cover under Coverages A ['Bodily Injury and Property Damage Liability'] or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance ... If this insurance is primary our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

*Id.* at 769, 772–76. Subsection c. provided that the insurer's obligations were limited to sharing with all other primary insurance on an equal basis if permitted by the other insurer's policy or, if not, "based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers." *Id.* at 769.

Citing *Mid–Continent,* Great American argues that, here, "there are two primary coverage policies, both policies contain identical 'other insurance' clauses, and Audubon asserts it paid more than its fair share of defense costs and indemnity on behalf of the insured, Holigan." It further contends that "the *Mid–Continent* decision is dispositive on Audubon's contribution and subrogation claims for defense costs and indemnity payments, and Great American has no obligation to reimburse Audubon." We disagree.

The insurers in *Mid–Continent* issued liability policies covering injury and damage during the same policy period. *See id.* at 768–69. And, based on the language in the insurers' respective policies, the supreme court concluded that those insurers were co-primary insurers and each policy provided coverage during the same policy period for the same loss. *See id.*

Here, however, Great American's policies covered the policy periods from 1995 to 1997, and Audubon's policies covered the policy periods from 1997 to 1998. Unlike the policies in *Mid–Continent,* the policies here were consecutive, not concurrent. And although the "other insurance" provisions of Great American's and Audubon's policies are identical to those in *Mid–Continent,* their respective insuring agreements state that they cover only "bodily injury" and "property damage" that occurs *during the policy period.* Because the policies are for *different* policy periods, by necessity the policies do not cover the same injury or damage and there is no "other valid and collective insurance [that] is available to the insured for a loss we cover...." *See id.* at 769.

Additionally, the cases on which *Mid–Continent* relied also involved co-primary insurers, not insurers that had issued policies covering consecutive policy periods. *See, e.g., Employers Cas. Co. v. Trans. Ins. Co.,* 444 S.W.2d 606, 607 (Tex.1969); *Traders & Gen. Ins. Co. v. Hicks Rubber Co.,* 140 Tex. 586, 169 S.W.2d 142, 148 (1943). And another case on which Great American relies, *Truck Insurance Exchange v. Mid–Continent Casualty Co.,* 320 S.W.3d 613, 616 (Tex.App.-Austin 2010, no pet.), which applied *Mid–Continent* in dicta to an insurer who refused to defend its insured, also involved co-primary insurers. The parties have not cited, and we have not found, any case applying *Mid–Continent* to bar an insurer's claim for contribution and reimbursement when the insurers were not co-primary insurers because their respective policies involved different coverage periods.

■ Based on the facts of this case, we conclude that Great American and Audu-

bon are not co-primary insurers and that *Mid–Continent* is distinguishable on that basis. Consequently, we conclude that *Mid–Continent* does not bar Audubon's claims against Great American and that the trial court did not err by denying Great American's traditional motion for summary judgment on this basis.

### GREAT AMERICAN'S NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT

In its final two sub-issues, Great American contends the trial court erred by denying its no-evidence motion for summary judgment on Audubon's equitable subrogation and breach of contract claims.

### A.

### Adequacy of Response to No–Evidence Motion

 In the no-evidence portion of its motion for summary judgment, Great American argued that *Mid–Continent* barred Audubon's claims and that Audubon had no evidence to support its claim for equitable subrogation, no evidence Great American had a duty to defend the homebuilder, no evidence the injury or damage occurred during Great American's policy periods, and no evidence they were jointly liable to the insured. Great American initially contends that Audubon's response to the no-evidence motion was "legally inadequate, and amounted to no response at all, because it failed to point the trial court to specific evidence as to each challenged element in each cause of action that would raise a genuine issue of material fact." It argues that Audubon's general reference to "discovery responses and deposition testimony does not satisfy its burden to respond" to the motion. It contends that Audubon's re-

sponse was "legally inadequate" under Rule 166a(i). We disagree.

Rule 166a(i) states:

(i). No–Evidence Motion. After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence. The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.

TEX.R. CIV. P. 166a(i).

Audubon did not refer specifically to the no-evidence portion of Great American's combined motion in its response to the motion. However, Audubon discussed at length why *Mid–Continent* did not bar its claims against Great American. And within that argument, Audubon cited and discussed other cases involving claims for contractual and equitable subrogation. Audubon also discussed at length why Great American owed the homebuilder the duties to defend and indemnify.

Although Audubon did not attach additional evidence to its response, it referred to and incorporated the evidence attached to its own motion for summary judgment. In its own motion, Audubon attached 11 evidentiary exhibits which it contended supported its claims. Those exhibits included evidence of Great American's agreement to defend the homebuilder and its withdrawal of that agreement, evidence of the settlement of the homeowners' and Prudential's claims against the homebuilder, excerpts of the homeowners' depositions, and Great American's responses to discovery in this lawsuit. Audubon referred to that evidence in its motion, iden-

tifying it by exhibit number, and argued that the evidence showed Great American breached its duties to defend and indemnify the homebuilder and that Audubon paid defense and settlement costs that Great American should have paid. We cannot conclude that Audubon's response to Great American's no-evidence motion was "legally inadequate." *See Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 207–08 (Tex.2002).

 Additionally, the purpose of summary judgment is "to eliminate patently unmeritorious claims and untenable defenses," not to deprive litigants of their day in court. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 228 (Tex. 2004) (quoting *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989)). In our review, we "examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *Sudan v. Sudan,* 199 S.W.3d 291, 292 (Tex. 2006) (per curiam) (quoting *City of Keller v. Wilson,* 168 S.W.3d 802, 824 (Tex.2005)). Our review of the "entire record" in this case includes Audubon's response to Great American's combined motion and Audubon's evidence attached to its own summary judgment motion. And when both parties move for summary judgment raising the same issues and the trial court grants one motion and denies the other, we review both motions and all summary judgment evidence to determine whether the trial court erred in its decision. *See Global Enercom Mgmt.,* 323 S.W.3d at 154.

## B.

### Claims for Breach of Contract

Great American argues that it was entitled to no-evidence summary judgment on Audubon's claims for breach of contract. It contends Audubon was not entitled to summary judgment on Great American's duty to indemnify because Audubon did not offer any evidence that the homeowners' claims were covered by Great American's policies and Audubon did not allocate the loss.

 An insurer's duty to indemnify its insured is determined by the facts established in the underlying suit against the insured. *D.R. Horton–Texas, Ltd. v. Markel Int'l Ins. Co., Ltd.,* 300 S.W.3d 740, 744 (Tex.2009) (quoting *Pine Oak Builders,* 279 S.W.3d at 656). "The insurer's duty to indemnify depends on the facts proven and whether the damages caused by the actions or omissions proven are covered by the terms of the policy." *Id.*

 The summary judgment evidence in this case showed that the homeowners purchased their home in November 1995. Around September or October 1996 they discovered water "leaking from the back wall of the living area" and the leak "was causing the hardwood floor to buckle." They reported the problem "immediately" to the homebuilder. Frank Kemeny from Holigan went to the house. He told the homeowners that " 'the balcony was not put in correctly' and was causing water damage." The evidence showed that it took until approximately March 5, 1998, to finish all the repairs from the water leaks that began in 1996. Based on this summary judgment evidence, we conclude that Audubon presented evidence that property damage occurred during Great American's policy periods (1995–1997) and that the trial court did not err by denying Great American's motion for no-evidence summary judgment on this basis. Because of our resolution of this issue, we do not need to decide whether Audubon proved its claim for equitable subrogation.

## C.

### Allocation of Loss

Great American also argues that, to the extent injury or damage occurred during its policy periods, it was nevertheless entitled to no-evidence summary judgment because Audubon did not allocate the loss between their respective policies. Great American contends that "Audubon had the burden under the doctrine of concurrent causes to segregate the damages and determine which part of the damages were attributable solely to the covered peril." Great American contends that allocation of loss is an issue of coverage which the insured must prove.

■ We construe Great American's argument that Audubon did not allocate the loss between Great American's and Audubon's policies as a collateral attack on the reasonableness of the settlement. *See Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.,* 256 S.W.3d 660, 670–74 (Tex. 2008) (discussing *Employers Cas. Co. v. Block,* 744 S.W.2d 940 (Tex.1988)). When an insurer breaches its duties to defend and indemnify its insured, however, the insurer may not collaterally attack the settlement by litigating the reasonableness of the agreement. *See id.* at 671 (discussing *Block,* 744 S.W.2d at 942–43).

■ The evidence here showed that property damage occurred during the insurers' respective policy periods and that the insurers, except Great American, agreed to defend and indemnify their mutual insured against the homeowners' claims. Because Great American wrongfully refused to defend and indemnify its mutual insured, we conclude that it is precluded from litigating whether Audubon allocated the loss among the policies. *See ATOFINA,* 256 S.W.3d at 670–74. We further conclude that the trial court did not err by denying Great American's no-evidence summary judgment on this basis.

### Conclusion

We affirm the trial court's judgment.